## Emma Pryor *v.* Edward B. Morgan and Howard Morgan, Administrators of the Estate of James B. Morgan, Deceased.

### *Gift—Evidence—Decedents' estates.*

In an action to recover securities which plaintiff claimed as a gift from her aunt, but which she had surrendered to her aunt's administrator, it is competent for the plaintiff to show that she had only been induced to surrender the securities to the administrator by a threat of imprisonment if she refused

Where a niece claims that her aunt with whom she lived had given her securities in her last illness, and the niece offers evidence showing a long-continued friendly intercourse between her aunt and herself, it is improper, in an action by the niece to recover the securities from the aunt's administrator, to admit evidence that the aunt shortly before her last illness had told the niece that she could not keep her any longer, and that she would have to get out; unless the offer contain the reason why her aunt told her this, or the purpose of the offer be disclosed.

### *Gift—Conversion—Assumpsit.*

Where an administrator, by threat of imprisonment, compels the surrender to himself of securities claimed by the person holding them as a gift from the decedent, and the administrator converts the securities into money, the person claiming the securities may maintain an action of replevin or waive the tort and sue in assumpsit to recover the value of them; and in such an action it is proper for the court to charge that although the property was taken from plaintiff by defendant in his official capacity, at the time believing he had a right to do so, yet, if it was proven the plaintiff was the owner, she was entitled to recover from him individually its value, with interest from the date it was taken.

### *Gift—Evidence—Statement—Charge of court.*

In an action of assumpsit where the plaintiff in her statement avers title and right of possession, and that defendant converted the property into money, and the plaintiff offered evidence tending to show an absolute gift, and a gift in expectation of death, it is proper for the court to instruct the jury, not only as to what constitutes an absolute gift, but also as to what constitutes a donatio mortis causa.

Argued March 13, 1895. Appeal, No. 82 Jan. T., 1895, by defendants, from judgment of C. P. Monroe Co., Sept. T., 1892, No. 5, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover the value of securities converted by defendants' intestate. Before ALBRIGHT, P. J.

The facts appear by the opinion of the Supreme Court.

At the trial plaintiff testified as follows:

"I am a niece of Mrs. Morton, deceased. I was in possession of a box which James Morgan got after her death, a tin box about a foot long. There was in it a deed for her property, seven shares of Easton bank stock, four shares of Stroudsburg bank stock, six shares of school house, $2,000 court house, $273 in money, two pocketbooks, two Mexican dollars, record of family Bible, deed for plot in cemetery for my own family and deed for Mrs. Elizabeth Pryor's plot in cemetery, and deed for plot of herself and Mrs. Silvara. The next day after her burial I gave them up. The burial was Wednesday. She died Sunday afternoon, Jan. 10, 1892. I gave them to James B. Morgan. He told me he had administered to the estate. I asked him what right he had to administer when aunt Mercy had given me everything. He said that makes no difference, I have administered and the keys belong to the administrator. He said he had the documents in his pocket but didn't show them to me. I told him I supposed I would have to take him at his word. I was told that I could be imprisoned if I didn't give them up."

Defendants' counsel objects to showing what Emma Pryor gave as her reason for surrendering the property to James B. Morgan, that is, that she had been told that she might be imprisoned if she refused to do so.

The court was of the opinion that it was competent for her to show why she surrendered the property which she alleged to be hers.

Evidence admitted.  Bill sealed.

Plaintiff then testified:

"I was told I could be imprisoned if I didn't give them up and on these grounds I did so. He then took the things." [1]

Defendants offered to show by Mary Segafus that shortly before Mercy Morgan was taken sick she had told Emma Pryor that she could not keep her any longer, and that she would have to get out, and that Emma Pryor made arrangements to leave, intending to go to New York, but that her aunt's illness stopped that arrangement.

Objected to as incompetent, immaterial and irrelevant.

By the Court: " What is here offered would not show un-

friendly feelings or the absence of affection, but simply that she did not find it convenient or found it impossible to keep her. It does not seem that it would tend to rebut anything that the plaintiff has shown. It is immaterial to the question."

Objection sustained and bill sealed for the defendant. [2]

The court charged in part as follows:

" [It can be taken as facts in the case that James B. Morgan took into his possession the property claimed, under the theory that it belonged to the estate of Mercy Morgan deceased, and that James B. Morgan was granted letters of administration upon her estate. And he inventoried the property claimed by the plaintiff along with the other property of the late Mercy Morgan and sold the same. Although he took the property believing or asserting it to be the property of Mercy Morgan, still, if it is proven that at the time of the taking it was the property of Emma Pryor, she is entitled to recover. If she is entitled to recover she is entitled to recover whatever of her property the defendant took or the value, with interest from the time of taking.] [3]   She claims for seven shares of Easton bank stock, four shares of Stroudsburg bank stock, six bonds, called School House bonds, evidently bonds of a school district, and what have been called Court House bonds, of the face value of two thousand dollars, (bonds of this county,) a sum of money amounting to about $270, a dollar or two more or less, including two Mexican dollars, a watch and two purses.   If you find that the plaintiff is entitled to some of these articles, but not all, then of course you can award in her favor for that which you deem she has proven her title to.   No doubt the property claimed here was the property of Mercy Morgan in her lifetime.   She died on the afternoon of the tenth day of January, 1892, which was on a Sunday.   [It seems to be undisputed that she had for a week or ten days previous to her death been quite ill;] [4]   she was an aged lady, about seventy-seven years old.   Emma Pryor was her niece and along with her young son at the time lived with Mercy Morgan.   The plaintiff avers that Mercy Morgan shortly before her decease, probably on Friday immediately previous to her death, made a gift of the property here in question to her, Emma Pryor.   I believe the only direct testimony as to the time of the gift is that of James Pryor.   He thinks it was Friday, might have been Thursday.   The plaintiff claims the property by a gift.

" A gift is the transfer of property where the person who re-ceives it does not pay for it. Any one who is the owner of property can by gift dispose of it to whomever he chooses, except he cannot do so to the prejudice of his creditors. He must be just before he is generous. But no rights of creditors come in question in this case. The question for you to consider is whether it is proved that Emma Pryor became the owner of this property by a gift made by her aunt Mercy Morgan. As you have heard, gifts are of two kinds. The plaintiff's counsel have not stated distinctly under which kind of gift they claim. Their assertion is that if you find the evidence a particular way, you could find that it was one kind of a gift, if different, then the other kind. The kinds of gifts are what are termed gifts inter vivos, which I shall term simply gifts, for convenience, and the other gifts donatio causa mortis, which I shall refer to as gifts in expectation of death. The simple gift, the gift between the living, is one where one person transfers property to another, and the person who receives it does not pay for it, and so is not made on expectation of death. As to gifts of that nature, and in fact the other kind also, the gift must be complete in order to be effective, in as much as a gift is volun-tary, and is without consideration. It must be complete and executed in order to be effective. You understand very well that you could not compel a man to give away his property simply because he had said or promised that he would do so. There must be nothing left undone. The property must be delivered by the donor and accepted by the donee, and the gift must go into absolute and immediate effect. I say the gift must be accepted by the donee, because you cannot compel any-body to become the owner of property without his consent, but in this case, inasmuch as the alleged gift was to the man-ifest advantage of the alleged donee, you can take it for granted that she assented to the gift and accepted it after it was made.

" I stated there must be a delivery of the property in order to constitute a good gift, and that delivery must be with the intention to give, that is, that the alleged donor intended and was willing that thereafter the property should no longer be his, but should be the property of the donee. So the donor must part with the possession and control of the property in order that it may be effective. If that is not done, then as I

have said to you, you cannot upon his mere promise compel him to do so, or sue him or his legal representatives because of the promise and that it was not fulfilled.

" When we speak of the delivery of property and the possession of it, the circumstances of the case must be borne in mind. The delivery must be such as the nature of the property will admit of, and the circumstances and the situation of the parties render reasonable and possible. Where it is reasonably possible there should be a manual delivery, an actual handing over of the property from the one to the other. The property here in question is of such a nature that an actual delivery was possible, and the court instructs you that, in order to make a good gift, that must have been done in this case. Where property is bulky, say a pile of lumber or a heap of ore or a large quantity of grain, then, upon a sale or gift of it, it is not always necessary to take the property and lift it from the place it is in and place it somewhere else. But questions of that kind do not come into question here, because this property was of little bulk or weight. It could have passed over, and in order to make a good gift there must have been such delivery. Then the situation of the parties must be borne in mind. Where people live in the same house, as was the case with the alleged donor and donee here, that should be borne in mind. And so we instruct you to consider that when you come to decide whether the tin box, in which the securities and property claimed by the plaintiff were, actually came into the possession of Emma Pryor. And just at this point, gentlemen of the jury, I will state to you what is in law deemed to be the possession of property. It is said that the possession of an article is the detention of it, the holding of it, the control of it, the condition in which not only one's own dealing with it is physically possible, but every other person's dealing with it is capable of being excluded. That is, a person has possession of property such as is in question here ; if he holds it in such a way that he can deal with it, he can prevent any other person from dealing with it rightfully.

" A gift donatio causa mortis, or in expectation of death, is defined to be the gift made by a person in his last illness or in peril of death, subject to the implied condition that if the donor recovers, or if the donee die first, the gift shall be void. It is like a simple gift, except that, without its being specified even,

there is connected with it the idea that if the person recovers from this sickness or escapes the peril, then the property shall be his again, or, if the person to whom he gives it dies before the donor, then the gift is void and the property belongs to the donor again. The requirements to make a gift of that nature good are an absolute delivery of possession on the part of the donor, the same as in the case of a simple gift, to which I have called your attention. So the gift in expectation of death, in order to be a valid gift, must be, in the first place, in view of the donor's death ; second, that the donor must die in that illness or in that peril, and, third, there must be a delivery. In order to be a valid gift in expectation of death it is not necessary that it should be mentioned at the time that the gift should be inoperative if the donor should not die, as he then expected to do, or if the donee should die before he does. And it is also an incident of this kind of gift that the donee, the person to whom the gift is made in expectation of death, of the death of the donor, should retain possession of the gift until the donor actually dies. It is said, and the court approve the saying and adopt it as a part of the instructions to you, that if it appears that the alleged gift is afterwards in the possession of the donor, it raises a presumption, an inference at least, that it has been revoked, or that it was not actually consummated by a delivery.

" [The testimony in this case is quite voluminous, and I shall not refer to the testimony of any particular witness, partly because I do not have the testimony in full before me, and partly because the court might fall into error of giving more attention to the testimony of one side than to that of the other, but chiefly because it is fresh in your minds, and counsel on both sides have substantially rehearsed the material parts of the testimony, and commented upon it, and have pressed every argument that arises thereon.

" Emma Pryor alleges that a few days before Mercy Morgan's death, Mercy gave to the plaintiff, Emma Pryor, a tin box which probably was locked at the time, I think her allegation is that it was locked at the time, and that its contents were the securities and other property she now claims. The testimony on that point is that Mercy Morgan was very sick, was lying in bed, and that she then handed the box to Emma

Pryor. The evidence on that particular point is that of Emma Pryor's son James, who says that he was sitting on the settee with his mother and that his aunt called his mother to the bedside and gave her the box, and that she said, ' Here Emma, take it, it is all I have, and I give it all to you.' That it was a tin box, and that he thinks that it was on Friday. Then he was cross-examined. He was asked, ' And your aunt took this box which was on the bed behind her? A. It was beside her. Q. Without anything being said she handed it to your mother? A. She said something. Q. What? A. "Here Emma"'—and then I believe he repeated as I said before. Then that he next went downstairs and his mother, Mrs. Pryor, went upstairs, —that he went down as soon as his mother went up the steps. Then he was asked: ' When she went out of the room with you she didn't have the box? A. Yes, sir, she was on the step. Q. Sure? A. I am not sure of it '—Well, what was said on this point you will remember.

" Now, gentlemen of the jury, but for that testimony the plaintiff would have no case. That is the only witness who testifies to the delivery by Mercy Morgan to Emma Pryor of the box in question which is said to have contained these securities. There is proof that Mercy Morgan before this time stated that she would give her property to her niece, Mrs. Pryor; that would not amount to a gift, it would not be binding. That evidence was introduced on the theory that it would tend to corroborate the allegation that the gift was actually made. It would help along that assertion, and would make the assertion that the gift had been made more probable, and for that purpose it was competent evidence. But to establish the gift which, as you now know, must be accompanied by delivery, it would of course be insufficient. Then testimony was received which if believed by you would tend to show that Mercy Morgan regarded Emma Pryor with affection; one or two of the witnesses say she said she regarded her the same as she would her own daughter. All that is evidence bearing upon the question as to whether the gift was made, and that is all it amounts to.] [5]

" Then when the matter of the possession of the box, whether the plaintiff had possession of it after the alleged gift, comes to be considered, you will bear in mind that Emma Pryor lived

in the same house with Mercy Morgan, and Mercy Morgan was during the latter days of her life sick in bed, unable to arise, and of course the opportunity of obtaining possession of the box was afforded Mrs. Pryor. She was in the house, living there where the box was, and Mercy Morgan was sick in bed. All these matters, and many more of the same nature that may operate upon the one side or upon the other, you will consider when you come to decide whether the plaintiff has established that there was an actual gift of these very securities. Then in order that the title by gift should be made out it is of course essential that the property alleged to have been given should be identified. It should be proven that the one party gave the actual things which the donee claims. Now, there is no testimony bearing upon the question as to what was in the box at the very moment when it is said it was handed over by Mercy Morgan. There is some evidence of what use she made of the box, of what she kept in it. It can be taken as a fact in the case, that Mercy Morgan at or shortly before the time of her death and some time before that was possessed of Easton bank stock and Stroudsburg bank shares, and that she had the schoolhouse bonds and the county bonds and the watch also. There is evidence also that there were a couple of Mexican dollars in the box at the time of her death. Everything bearing upon that point, consider. If you should find that the box was handed over as the plaintiff alleges, is it proved to your satisfaction that the stocks and other securities were in it at the time. You may find that from circumstances, if the circumstances are convincing, but unless it is proved that this property or some of it was in the box, then the plaintiff cannot recover. Of course you will consider whether it was possible, even if the box was handed over, for the plaintiff to put the property into it which was not in it at the time of its transfer. The assertion of the plaintiff is that before Mercy Morgan died she made this gift. If she has proved a gift of one kind or the other, whether it was a simple gift or a gift in expectation of death, then the property is hers and she is entitled to recover. It was a simple gift, that is a gift inter vivos, if the intention was that from that moment on Mercy Morgan should cease to own the property, and Emma Pryor should be the owner absolutely, without regard as to whether Mercy should get well again·

or not. It was one in expectation of death if Mercy Morgan gave Emma Pryor this same property and she, Mercy, expecting that she would die of that illness she was then suffering from, and if the intention was, whether expressed or not, that if she got well again from that illness, or if Emma Pryor should die before Mercy Morgan, then it should be the property of Mercy Morgan again. The defendant insists that you can find from the evidence that there was no gift, no handing over of the box and that the alleged gift is a pretense. [It is insisted that you can find that after the death of Mercy Morgan Emma Pryor was placed in such a position that if she had actually been the owner of this property she would have asserted her claim, that it was about to be taken by the administrator and appraised and disposed of by him, and that she should then have asserted her right; and that she made declarations then that were inconsistent with the idea that she was the owner. Of course all this you will consider. A person may be the owner of property, and may stand by when somebody else claims it; he does not lose his ownership because he does not assert his right or contend about it. Still the fact that he does stand by and says nothing is always evidence on the question of his title.

" Then on the part of the plaintiff it is alleged that these assertions are not true, that she did assert her claim. On that question, and probably on others, you will have to consider which testimony is to be believed by you. Then it was claimed by plaintiff's counsel that she didn't assert her title on some occasions because she thought there was no use.] [6]

" You must not conclude that the plaintiff is entitled to this property because Mercy Morgan said she would give it to her, if you find that that was said, on the theory that it was in the nature of testamentary disposition. In order to entitle a party to claim property of a deceased by testament or will, certain forms must be observed. A will must be proven before the register of wills, which was not the case here. You will consider the evidence of a nature I have alluded to as bearing upon the question of gift. She could not hold the property because her deceased aunt said she would give it to her. Then when you come to consider the question of delivery, and of possession by Emma Pryor, certain facts will be operative. Defendant's

counsel urges that it is not proven that the keys of this box were given to Emma Pryor, and that the custody of the keys is an important fact in the question of delivery and possession. While it no doubt has some bearing upon the case, it is not controlling; undoubtedly everybody would say that there may be a delivery of a tin box such as this and its contents, if it clearly appears that one person intended to give it to another, although it should be locked and the key not handed over, or even kept by the donor, because it would be possible, and very easy in fact, to get the contents of the tin box without being able to unlock it, though, no doubt, the key unlocking a box even as small and frail as this is to be considered of consequence. In brief, the plaintiff is entitled to recover if she has proven that Mercy Morgan delivered to her these securities and the other property she claims, with the intention that she should no longer be the owner of it and that it should become the property of her, Emma Pryor, and that she, Emma, actually obtained the control and possession of it. I have said before, it might be a good gift if it was causa mortis, if the intention was that it should be inoperative if Mercy Morgan should recover. To be a good gift causa mortis, it is necessary that the donor should be sick or in peril and believe that in consequence of that sickness or peril he or she would soon die. And if, considering the whole case, such a parting with the possession, with the intent to part with the title, is not established by evidence that is satisfactory to you, then you will say that the plaintiff has failed to make out her case and your verdict will be in favor of the defendant."

Defendants' points were as follows:

"1. The plaintiff not having supported her claim by clear and satisfactory proof upon every point essential to title by gift, the verdict must be for the defendants. *Answer:* That is negatived. [7]

"2. Unless the jury are satisfied from the evidence that there was such delivery of possession of the box and the property claimed, in this case, as would make it irrevocable, the verdict must be for the defendants; and such evidence must be clear and satisfactory. *Answer:* It must have been irrevocable, except that if it is found that it was a gift in expectation of death (donatio causa mortis), then there may have been the'

implied condition of revocation if Mercy Morgan should recover from that illness, by reason of which she believed she would die soon, if she so believed, and the implied condition of revocation if Emma Pryor should die before Mercy Morgan. The instruction as to the degree of proof is found in the answer to the third point. Thus qualified the point is affirmed. [8]

" 3. The proof to establish the gift in this case should be of a character so convincing as to remove from the minds of the jury any reasonable doubt as to the fact of the gift having been made, and also that there was a delivery of the thing given. *Answer :* The burden is on the plaintiff to establish the facts that there was a delivery of the property claimed, and that at the time of delivery it was the intention of Mercy Morgan that it should thereafter be the property of Emma Pryor, except as to the condition of again getting well or Emma's dying first, as mentioned in the answer to the second point, and these facts the plaintiff must establish by the preponderance of the evidence, but by full proof. To warrant a finding for the plaintiff the evidence in her favor must be satisfactory to the jury, that is, the jury must believe that the plaintiff's material allegations are proved, the jury duly considering the opportunities plaintiff had to create the appearance of a gift, even if there was none, and also whether the material testimony is truthful. The point is negatived. [9]

" 4. To entitle the plaintiff to recover in this case, she ought to come with clear and satisfactory evidence of her title. The burden of proof is upon her to show that the gift claimed was made to her, and all presumptions are against her, and unless the jury, from all the evidence, finds beyond a reasonable doubt that the gift of the box and its contents was made as claimed, the verdict should be for the defendants. *Answer :* All presumptions are not against her, but the jury are to consider that she had access to Mercy Morgan's property here in dispute, and that she might have taken it after the decease. The point is negatived." [10]

The court reserved the question whether there was evidence in the case to be submitted to the jury upon which the plaintiff was entitled to recover.

Verdict for plaintiff for $3,818.87. The court subsequently overruled a motion for judgment for defendants non obstante

veredicto, and entered judgment for plaintiff on the verdict. Defendants appealed.

*Errors assigned* were (1, 2) ruling on evidence, quoting the bill of exceptions; (3–10) above instructions, quoting them; (11) entry of judgment on question reserved whether there was any evidence in the case to be submitted to the jury on which the plaintiff was entitled to recover.

*Charles B. Staples*, for appellants.—There was no sufficient evidence of duress in the surrender of the securities : National Bank v. Dersham, 4 Penny. 467.

The action for moneys had and received is an equitable one, and as such the defendants have the right to go into all the equities of the case : Barr v. Craig, 2 Dall. 151.

One who voluntarily pays money, with full knowledge, or means of knowledge of all the facts, without any fraud being practiced upon him cannot receive it back by reason of the payment having been made in ignorance of the law : Real Estate Saving Institution v. Linder, 74 Pa. 373 ; Irvine v. Hanlin, 10 S. & R. 220 ; Hinkle v. Eichelberger, 2 Pa. 483 ; Lackey v. Mercer Co., 9 Pa. 318 ; Gould v. McFall, 118 Pa. 455.

The count for money had and received is governed by equitable principles and lies only where the defendant ex æquo et bono ought to refund the money received : Deysher v. Triebel, 64 Pa. 383.

It is error for the court to submit the evidence and theory of one party prominently and fully to the jury, and not to call their attention to the main points of the opposite party's case : Canal Co. v. Harris, 101 Pa. 93.

The delivery of a key to a chest with words of gift of the chest is sufficient delivery : Coleman v. Parker, 114 Mass. 30 ; Thornton on Gifts, etc., 139.

Where an alleged donor has been surrounded during his last illness by the family and relatives of the alleged donee, and the claimant has had opportunities to obtain possession without title of the subject of the alleged gift, the proof in support of the claim ought to be clear and satisfactory upon every point essential to title by gift: Scott v. Reed, 153 Pa. 14.

The court below did not seem to comprehend the position of

the defendants that the facts as proven threw doubt upon the alleged gift, and that the plaintiff, to establish her case, was bound to remove this doubt: Rhodes v. Childs, 64 Pa. 23; Cummings v. Meaks, 2 Pitts. 490.

*W. A. Erdman* and *John B. Storm*, for appellee.—It is error to exclude explanatory evidence bearing upon the issue and forming part of the res gestæ: Breneman v. Furniss, 90 Pa. 186.

Where the direct tendency of evidence is to lead the minds of the jury into an irrelevant inquiry, it should be rejected: Cummings v. Williamsport, 84 Pa. 472; Velott v. Lewis, 102 Pa. 326.

A party cannot claim an estoppel arising out of his own misrepresentations or fraud: Hill v. Canfield, 63 Pa. 77.

It is essential to an estoppel that the party should be misled or injured: Diller v. Brubaker, 52 Pa. 498; Edelman v. Yeakel, 27 Pa. 26; Sensinger v. Boyer, 153 Pa. 628.

If the judge make a mistake in narrating the facts, counsel should call his attention to it at the time, that it may be promptly corrected: Jaffray & Co. v. Frothingham, 148 Pa. 213; Krepps v. Carlisle, 157 Pa. 358; Halfman v. Penna. Boiler Ins. Co., 160 Pa. 202.

A donor on his death bed, fully aware of the near approach of his dissolution, may make an absolute gift or a gift inter vivos, the fact of his near death not vitiating it: Thornton on Gifts, secs. 21, 44.

Although parts of a charge when taken separately may seem to be erroneous, and indicate a leaning to one side or the other, there is yet no error if, taken as a whole, the questions at issue are fairly left to the jury: Reese v. Reese, 90 Pa. 89; Penna. R. R. v. Coon, 111 Pa. 430.

Error cannot be assigned for the omission of a judge to charge in a particular way unless his attention was called to it by a special request: Fox v. Fox, 96 Pa. 60; P. & R. R. R. Co. v. Getz, 113 Pa. 214; McMeen v. Com., 114 Pa. 300; Serfass v. Driesbach, 141 Pa. 142.

The plaintiff supported her position that a gift had been made, by a clear and satisfactory evidence on every essential of a gift: Jacques v. Fourthman, 137 Pa. 428; Osterhout's Est.,

148 Pa. 223; Lewis v. Merritt, 113 N. Y. 386; Devlin v. Greenwich Savings Bank, 125 N. Y. 756.

What is sufficient proof to establish a gift depends upon the evidence in each particular case : Thornton on Gifts, sec. 220.

The proof in this case, while similar to that presented in Rhodes v. Childs, 64 Pa. 23, which was affirmed by the Supreme Court, was much more complete.

OPINION BY MR. JUSTICE DEAN, October, 7, 1895 :

Emma Pryor, the plaintiff, claimed to recover from defendants the value of certain county bonds, worth $2,000 ; shares of bank stock, $870 ; school district bonds, $600 ; money and jewelry, $285 ; the value of the whole being about $3,800.

All of the property belonged, in her lifetime, to Mercy Morgan, an aged single woman, resident in Stroudsburg, and who died on the 10th of January, 1892. The plaintiff, a niece of Miss Morgan, alleged her aunt had made a gift of this property to her about three days before her death ; that defendants' intestate, James B. Morgan, as administrator of Mercy Morgan, by misrepresentation had induced her to surrender the possession to him, and thereupon converted it to his use.

It appeared from the evidence that Mercy Morgan, at her death, was about 77 years of age ; her occupation was that of seamstress; she had, through a long life of industry, economy and thrift accumulated this little estate. For nearly all of the last fifty years of her life she had lived in the family of her sister, Mrs. Ellen Silvara ; Emma Pryor, the plaintiff, is a daughter of Mrs. Silvara; she had married some years before, but during the last four years preceding Miss Morgan's death had, with her children, occupied the house with her mother and aunt; there was conflicting evidence as to whether the relations between these women, thus situated, were at all times harmonious ; but there was also evidence of deep affection on part of the aunt for her niece, which was reciprocated by the niece in such kindness and services as are usually appreciated by the aged and infirm. The aunt, often, in the presence of disinterested persons expressed her gratitude for these services, and declared her intention of giving her niece at her death all she had. To an intimate friend of thirty years, Lydia Palmer, she said, two or three years before her death, she would give

all her property to her niece; would get a box and put her papers in it; then only two or three weeks before her death told the same witness she had done so. Other evidence of a like character, indicative of an intention to make the gift to Emma, was adduced. The illness ending in Miss Morgan's death was of about ten days' duration, and there was evidence that she was conscious of the serious nature of it and did not hope for recovery. She had in her room a tin box, in which she kept the property sued for; this she constantly had near her, and kept the keys to it under her pillow; on the Friday preceding the Sunday of her death, it was testified by one witness, a boy then ten years old, the son of Emma Pryor, the plaintiff, that Miss Morgan called his mother to her bedside and gave her the box, saying: "Here, Emma, take it, it is all I have; I give it all to you;" that his mother took the box and went out of the room with it. There was proof that the securities, money and other articles claimed were in the box. There was conflicting evidence as to what took place, and what was said, when the administrator demanded the keys and took possession of the box; the plaintiff giving evidence tending to show she then asserted her right, and only surrendered the possession because of fear of imprisonment; on the other hand, defendants offered evidence tending to show declarations and conduct of plaintiff inconsistent with her claim now.

The learned judge of the court below submitted the evidence to the jury, instructing them, that if they believed there was a gift inter vivos or an absolute gift of the box and contents; or if a gift donatio causa mortis, in expectation of death, subject to the implied right of revocation if the donor recovered, plaintiff was entitled to a verdict. As to the character of the evidence necessary to establish either, he further instructed them they must find there was an actual delivery of the box; a change of the physical possession; that the property sued for must have been in it at the time of the change of possession; that if a donatio causa mortis the donor must have been in conscious peril of death and the donee must have retained possession until after the expected event. He further expressly told them that notwithstanding all the testimony tending to show Miss Morgan's affection for her niece and her expressed intention to

reward her by a gift of her estate, yet of itself this was wholly insufficient to warrant a verdict; that unless they believed the testimony of plaintiff's son, James Pryor, as to the actual deliv: ery of the box, with the expressed intent to give its contents at the time, the verdict must be for the defendants. Under the charge there was a verdict for plaintiff. The court had reserved as a question of law whether there was any evidence which would warrant a submission to the jury to find a gift; afterwards in an opinion filed it entered judgment on the verdict on the point reserved; and now defendants appeal pressing eleven assignments of error ; two of them to rulings on offers of evidence and nine to charge and answers to defendants' points.

The first exception is to the admission of testimony in explanation of plaintiff's surrender of the box to James B. Morgan, the administrator. Plaintiff was told she would be imprisoned if she did not give it. Defendants objected to the evidence as immaterial ; the court admitted it. Plaintiff claimed the prop erty was hers as a gift from her aunt; defendants might very suggestively ask, Then why did you give it up to the administrator after her death? She attempted by this offer to answer, Because I was told I would be imprisoned if I did not. Whether this satisfactorily explained her inconsistent conduct was for the jury, but that it was material is obvious and there was no error in admitting it.

Second assignment. Defendants offered to show by a witness, Mary Sigafus, also a niece of Miss Morgan, who had already testified at considerable length, that Miss Morgan had told Emma Pryor, shortly before her sickness, she could not keep her any longer, and that she would have to get out, and that Mrs. Pryor had made arrangements to leave, but that her aunt's illness had detained her.

This was objected to by plaintiff as irrelevant, and the court sustained the objection. What the purpose was, is not disclosed in the offer; why she could not keep her niece longer is not hinted at. The evidence, possibly, in some view of the case, may have been relevant; but taking the offer as it stands its relevancy is not apparent, and we cannot convict the court below of error in rejecting evidence where the purpose is not disclosed in the offer itself.

Third assignment. The court instructed the jury that al-

though the property was taken from the plaintiff by the administrator in official capacity as representative of the intestate aunt, at the time believing he had a right to do so, yet, if it was proven the plaintiff was the owner, she was entitled to recover its value with interest from the date it was taken. Appellants complain that this was error, and Barr v. Craig, 2 Dall. 151 ; Irvine v. Hanlin, 10 S. & R. 220, and other cases following them, are cited to show that a voluntary payment by one with full knowledge or the means of knowledge of his right, cannot be recovered back. But this principle has no application to the facts here. The foundation of plaintiff's right depended on her legal title to specific property; if she made out that title, it was wrongfully taken from her possession, for it is not pretended she disclaimed title to it, or made a gift or sale of it to the administrator ; the most that can be said is, she permitted him to take it, when he demanded it as a right ; she was not bound to assert her right by physical resistance ; if it was a gift from her aunt, then he asserted an unlawful demand, and the possession which he took in pursuance of it was unlawful. On her statement, she could have replevied it, but she could also waive the tort, and sue in assumpsit for its value. On the evidence, there were no equities to enforce ; the action was at law to determine the single question, who had title to the box, and the answer to that determined the verdict. And she might bring her action against defendant as an individual, or as administrator, at her election. In Michener v. Dale, 23 Pa. 59, a case almost exactly such as this on its facts, and where the suit was against the administrator individually, this court held : " The property having been converted, and its equivalent only being in the hands of the administrator, the action was well brought in assumpsit."

Fourth assignment. This complains of a misstatement of evidence by the court. The learned judge instructed the jury that to warrant a verdict for plaintiff they must find either a gift inter vivos or a donatio causa mortis, and then adverted to the essentials of proof to establish either. It is urged the plaintiff did not claim it to be a gift in expectation of death, and therefore the suggestion of such a finding was error. We do not know what plaintiff claimed except from the statement filed ; that simply avers title and right of possession to the prop-

erty, and that defendants' intestate deprived her of it, and converted the property into money, and refused to pay it over. Under this statement, she could show title by purchase, inheritance or gift; she offered evidence, which tended to show an absolute gift, and a gift in expectation of death; what counsel claimed in his argument to the jury to be the nature of her right is no limitation on the court; the evidence was all in and before the jury; that definition which counsel often forget doubtless occurred to the learned judge, that a court is a place where justice is judicially administered, and as the evidence, in one view of it, tended to prove a donatio causa mortis, he instructed the jury on that subject; this not only was his right, but also was his duty.

The fifth to eleventh assignments of error may be considered together; they in substance complain that the charge was one sided, with no adequate presentation of defendants' evidence. We have carefully examined it in the light of the evidence, and are of opinion the complaint is not well founded. The evidence was, to some extent, contradictory, and the court did not go over it in detail on either side, but the law, which in such cases so carefully guards the estates of the dead from the rapacity of the unscrupulous, was most pointedly stated, and the jury was instructed to apply it to the evidence, before finding as a fact any essential element of plaintiff's case; on every point they were made to understand the presumptions were with defendants, and the burden of rebutting them was on plaintiff. Although concise, it was a clear and impartial charge, free from error.

Therefore, all the assignments of error are overruled and the judgment is affirmed.