[Civ. No. 857. First Appellate District.—April 14, 1911.]

## ERWIN COOPER, as Executor of Last Will of JOHN H. LOCHHEAD, Deceased, Appellant, v. SPRING VALLEY WATER COMPANY, a Corporation, Respondent.

ACTION FOR CONVERSION OF CORPORATION STOCK — ALLEGED THEFT— ERRONEOUS INSTRUCTION—EXCLUSION OF RATIONAL HYPOTHESIS— REASONABLE DOUBT.—In an action by an executor to recover damages for the conversion of the stock of a corporation belonging to the estate, in which it is claimed that the stock was obtained by theft, it is held prejudicially erroneous to instruct the jury that "circumstances relied on to establish the theft of the stock must not only be consistent with the hypothesis that the stock was stolen, but they must also be inconsistent with any other rational conclusion, and where there is a failure of proof in a particular necessary to establish such theft, the whole chain of circumstances fails, and your verdict must be for the defendant," which was in effect to require proof of such theft beyond a reasonable doubt.

ID.—RULE IN CIVIL CASES — PREPONDERANCE OF EVIDENCE, THOUGH CRIME IS INVOLVED.—In civil cases the affirmative must be proved, and when the evidence is contradictory, the decision must be made according to the preponderance of the evidence, even though the theory of the case involves an accusation of a felony or other crime; and plaintiff is not required in any civil action in which a crime is involved to prove it with the same certainty that is required in a criminal prosecution, where the object is punishment only.

ID.—EFFECT OF PRESUMPTION OF INNOCENCE — MEASURE OF COUNTER PROOF.—The presumption that a person is innocent of crime or wrong is evidence which controls only to the point that it is overcome in a civil case by the preponderance of evidence; and in a criminal case by proof beyond a reasonable doubt.

ID.—ERRONEOUS INSTRUCTION NOT OVERCOME BY OTHER CORRECT INSTRUCTIONS—CONFLICTING INSTRUCTIONS.—It is held that the erroneous instruction is not overcome by other conflicting instructions, with no allusion to the special charge of proof required to prove a theft in a civil case, and which at most would involve an irreconcilable conflict between the instructions. In such case it is impossible to tell which of the conflicting rules presented to the jury was followed by them, and the erroneous instruction must be deemed to be prejudicial.

ID.—CLAIM OF NECESSARY VERDICT—POSSIBLE VERDICT FOR PLAINTIFF— CONFLICTING EVIDENCE.—It cannot be claimed that the verdict of the jury for the defendant was necessary, regardless of the erroneous

instruction, where it appears that the evidence for the plaintiff is sufficient to have supported a verdict in his favor, had such erroneous instruction not been given. Of course, it is not intended to be intimated, where the evidence is conflicting, that the evidence compelled a verdict either way. That is a question the determination of which rests exclusively in the discretion of the trial judge.

ID.—EQUITABLE ESTOPPEL—MAXIM—SUPPORT OF INNOCENT PARTY—INAPPLICABLE INSTRUCTION.—An instruction respecting the doctrine of equitable estoppel, given at request of respondent, embodied in the maxim that "where one of two equally innocent parties must suffer from the fraud of a third, he who first trusted must suffer," should not have been requested or given where respondent's counsel concede that it was inapplicable to any phase of the case.

ID.—INSTRUCTION EMBODYING FACT NOT IN EVIDENCE.—An instruction embodying a fact not in evidence is to that extent erroneous.

ID.—REQUESTED INSTRUCTION IMPROPERLY REFUSED—NOTICE OF OWNERSHIP OF STOCK — PROTECTION OF DEFENDANT — LIABILITY.—A requested instruction based upon undisputed evidence that before defendant canceled the stock the executor notified it that the stock belonged to the estate, and forbade it to transfer it; that, "Upon receipt of this notice, defendant could lawfully have refused to transfer the stock, and could have commenced an action, without expense to itself, against the persons claiming to own the stock to compel them to litigate their claims to it, and when the court had decided who the owner was, defendant could have recognized such person as the owner without incurring any liability to any of the other claimants. It was not obliged to pursue this course, however, but it had the right to decide, without the aid of the court, whom it would recognize as the owner of the stock, but it took the risk of having to pay the true owner the value of the stock if it turned out that the person it had recognized as the owner was not the true owner," was correct and pertinent, and should have been given.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

W. C. Sharpstein, for Appellant.

Page, McCutchen & Knight, and Page, McCutchen, Knight & Olney, for Respondent.

LENNON, P. J.—In this action the plaintiff, as the executor of the last will and testament of John H. Lochhead, de-

ceased, sought to recover damages of the defendant for the conversion of forty shares of the capital stock of the "Spring Valley Water Works," alleged to have been the property of the estate of said deceased. Plaintiff's complaint is in the usual form, and the answer of the defendant consists of denials only. The case was tried with a jury. The verdict was for the defendant, and judgment was entered accordingly. From the order denying his motion for a new trial plaintiff appeals. The appeal is prosecuted under the provisions of section 941b of the Code of Civil Procedure, and is presented to this court upon the engrossed statement of the case used upon appellant's motion for a new trial.

Appellant's assignments of error relate exclusively to the giving of certain instructions, and the refusal to give others requested by appellant. It is one of the contentions of respondent that the jury arrived at the only verdict possible under the evidence, and, therefore, assuming that the court erred to the prejudice of appellant in its charge to the jury, the judgment should not be disturbed.

This view of the case requires a statement of so much of the evidence as will illustrate the points presented by the respective parties; and inasmuch as appellant's *résumé* of the evidence given upon the whole case is clear, concise and undisputed, we herewith quote and adopt it as a statement of the material facts of the case:

"The evidence on the part of plaintiff showed that the stock in controversy stood on the books of the company in the name of John H. Lochhead at the time of his death; that for a number of months prior to the death of said Lochhead one George M. Terrill collected the dividends on said stock pursuant to a written order given him by Lochhead more than a year prior to the latter's death; that these dividends were paid by Terrill to Lochhead to the date of the latter's death, which event occurred the fourth day of May, 1899; that the certificate evidencing these shares was in Lochhead's possession and indorsed as late as October, 1898; that although Terrill had been attending Lochhead as the latter's physician for a number of years, he had on several occasions admitted that he was serving Lochhead without compensation because Lochhead was himself a physician; and that as late as April 1, 1899, about five weeks before Lochhead's death, and three

months after Terrill claimed the stock had been transferred to him in payment of his services, Terrill, in a conversation with an intimate friend of Lochhead's spoke as though he had not been paid; that immediately after Lochhead's death plaintiff had conversations with Terrill in which the latter did not claim ownership of the stock, but that he had it in his possession as security for the payment of his services; that thereupon plaintiff served a written notice on the company to the effect that the stock in question belonged to Lochhead's estate; that the certificate was indorsed and was believed to be in the possession of Terrill, and forbidding transfer of it; that Terrill presented the stock for transfer after the receipt of this notice, but transfer was refused; that subsequently it was presented by the First National Bank and transfer was made to it, and that the value of the stock on the day of its cancellation and transfer to the First National Bank was $102 a share.

"On the part of defendant the evidence showed that Terrill was Lochhead's physician and had been serving him for eight years, and that in January, 1899, Lochhead indorsed and transferred the stock to Terrill in payment of his services and upon his promise to pay Lochhead the dividends on the stock as long as Lochhead lived; that in the same month Terrill pledged the stock to the First National Bank for a loan made him, where it remained until Lochhead's death."

Upon the impanelment of the jury plaintiff's attorney made an opening statement, wherein he said:

"The theory of the plaintiff in this case is that the stock was stolen by Dr. Terrill either during Dr. Lochhead's last illness or after his death. . . . The testimony in regard to the theft of the stock will necessarily be what is known as circumstantial, that is, we will not be able to produce any witness who saw the actual taking of the stock, but we expect to introduce evidence that will satisfy your minds of the fact that Dr. Terrill did steal the stock."

The defendant in turn claimed that the stock in controversy had been indorsed and transferred to Dr. Terrill for a valuable consideration.

The court's charge to the jury included the following instructions:

No. 2. "In civil cases, and this is a civil case, the affirmative of the issue must be proved, and when the evidence is contradictory, the decision must be according to the preponderance of the evidence."

No. 20. "The court further instructs you that if loss or damage must be suffered by one of two equally innocent parties, then and in that event the loss or damage must be borne by the party whose negligence has made the loss or damage possible, and, in this case, the court instructs you that the plaintiff, as the executor of the last will of Dr. Lochhead, stands in the same position, relative to this stock, as Dr. Lochhead would stand if he were now living."

No. 21. "The court instructs you further that in order to establish the theft of this stock by Terrill, the plaintiff must produce satisfactory evidence of that fact."

No. 22. "Suspicion will not warrant a verdict of theft; it must be established by such positive proof of actual theft or circumstances as to preclude any other inference so as to convince the mind of a reasonable man. Innocence is always presumed, and the presumption cannot be overcome except by satisfactory proof to the contrary. It is also presumed that the ordinary course of business has been followed until the contrary is shown by satisfactory evidence. If you believe that this stock came into the possession of the bank in January, 1899, and that during the life of Lochhead no claim was made by him that the stock had been stolen, you can consider that circumstance."

No. 23. "Circumstances relied on to establish the theft of this stock by Dr. Terrill must not only be consistent with the hypothesis that he stole such stock, but they must also be inconsistent with any other rational conclusion, and where there is a failure of proof in a particular necessary to establish such theft, the whole chain of circumstances fails, and your verdict should be for defendant."

Appellant complains—and we think justly—that the charge of the court, in so far as it attempted to define the amount and quality of proof required of appellant in order to establish the alleged theft of the stock, imposed upon him a burden of proof greater than that required by law.

"In civil cases the affirmative must be proved, and when the evidence is contradictory, the decision must be made ac-

cording to the preponderance of the evidence. . . ." (Code Civ. Proc., sec. 2061, subd. 5.) In other words, "the result should follow the preponderance of the evidence" (2 Wharton on Criminal Evidence, 1246), and this rule applies to all civil cases alike, even though the theory of the case involves, as it does here, an accusation of felony. (*Brown* v. *Tourtelotte,* 24 Colo. 204, [50 Pac. 195] ; *Mead* v. *Husted,* 52 Conn. 56, [52 Am. Rep. 554].) This was declared to be so by our supreme court as early as the case of *Ford* v. *Chambers,* 19 Cal. 143. Subsequently, in the case of *Merk* v. *Galzhaeuser,* 50 Cal. 631, the court, without considering *Ford* v. *Chambers,* 19 Cal. 143, declared that section 2061, subdivision 5, of the Code of Civil Procedure was but an affirmance of the general rule at common law, and announced the doctrine that in a civil case involving an accusation of crime, the accused "would be entitled to the benefit of any reasonable doubt of his guilt in the minds of the jury, in the same manner as in a criminal trial."

This construction of the statute, however, is in conflict with the rule prescribed in *Murphy* v. *Waterhouse,* 113 Cal. 467, [54 Am. St. Rep. 365, 45 Pac. 866], and it is expressly repudiated in *Hearne* v. *De Young,* 119 Cal. 670, [52 Pac. 150, 499].

It is the generally accepted doctrine in other jurisdictions that in civil cases, where a criminal act is directly pleaded or only incidentally involved, such criminal act may be established by a preponderance of evidence. (*Kane* v. *Hibernia Ins. Co.,* 39 N. J. L. 697, [23 Am. Rep. 239].)

It may be safely asserted that there is no rule of law sanctioned by the weight of authority which requires the plaintiff in a civil action, even though the result thereof imputes a crime, to prove his case with the same certainty that is required in a criminal prosecution. (*New York & B. Ferry Co.* v. *Moore,* 102 N. Y. 667, [6 N. E. 293] ; *United States Ex. Co.* v. *Jenkins,* 73 Wis. 471, [41 N. W. 957].)

The reason for the rule limiting the burden of a plaintiff's proof in such cases to a preponderance of evidence is founded largely "in the importance of preserving the distinction between civil and criminal cases with the growth of the criminal law. Almost every tortious act is by statute made indictable if done willfully or maliciously; and the courts should be re-

luctant to adopt, in civil cases, the rules peculiar to criminal law, lest wrongdoers be enabled to avoid civil liability, as well as escape criminal responsibility, under cover of the rules of criminal prosecution, the object of which is punishment only.'' (*Kane* v. *Hibernia Ins. Co.,* 39 N. J. L. 697, [23 Am. Rep. 239].)

Evidence sufficient to convince beyond a reasonable doubt necessarily excludes every other hypothesis but that of a defendant's guilt (*Stout* v. *State,* 90 Ind. 1, 2; *State* v. *Wilcox,* 132 N. C. 1120, [44 S. E. 625]; *Commonwealth* v. *Costley,* 118 Mass. 1, 2; *Carlton* v. *People,* 150 Ill. 181, [41 Am. St. Rep. 346, 37 N. E. 244]; *Catasuqua* v. *Hopkins,* 141 Pa. 30, [21 Atl. 638]); and, therefore, the trial court, in that portion of its charge herein quoted, in effect told the jury that the plaintiff must establish his case, as far as the alleged theft of the stock was concerned, beyond a reasonable doubt.

This is not only against what we conceive to be the settled rule of law, but it is opposed to the express language of the statute.

It is insisted upon behalf of respondent that the instructions numbered 22 and 23 simply told the jury that, inasmuch as the defendant's witness Terrill was incidentally charged with the commission of a crime, the presumption of innocence which obtains in civil as well as criminal cases should be given proper consideration, and that to overcome this presumption not only ''satisfactory'' but ''convincing'' proof was necessary; that, in any event, the charge of the court as a whole is free from prejudicial error because at the outset the court instructed the jury that ''in civil cases the affirmative of the issue must be proved, and when the evidence is contradictory, the decision must be made according to the preponderance of evidence.''

''That a person is innocent of crime or wrong'' (Code Civ. Proc., sec. 1963, subd. 1) is a presumption of law which applies in civil and criminal cases (*Hunter* v. *Hunter,* 111 Cal. 267, [52 Am. St. Rep. 180, 43 Pac. 756, 31 L. R. A. 411]), and the court or jury must find in accordance with this presumption unless it be controverted and overcome by *other evidence.* (Code Civ. Proc., sec. 1961; *Bickerdike* v. *State,* 144 Cal. 698, [78 Pac. 277].) In other words, the presumption that a per-

son is innocent of crime or wrong is itself evidence, and controls only to the point that it is overcome in a civil case by a preponderance of evidence, and in a criminal case by proof beyond a reasonable doubt. (*Kurz* v. *Doerr*, 86 App. Div. 507, 83 N. Y. Supp. 738; *McBee* v. *Bowman*, 89 Tenn. 132, [14 S. W. 481].)

The general proposition of law with reference to the scope and effect of the presumption of innocence was sufficiently covered in that portion of the trial court's charge, wherein the jury was told that "innocence is always presumed, and the presumption cannot be overcome except by satisfactory proof to the contrary." Satisfactory evidence is defined by section 1835 of the Code of Civil Procedure, and declared to be sufficient of itself to justify a verdict, and it has been said that "when a matter is proved to the satisfaction of a jury *by a preponderance of evidence,* then it can be affirmed that they are convinced of its truth, and being *thus convinced* of its truth they can base a verdict upon it." (*Treadwell* v. *Whittier,* 80 Cal. 584, [13 Am. St. Rep. 175, 22 Pac. 266, 5 L. R. A. 498].) All that followed in the charge of the court cannot be construed as a summarization of the rule by which the jury was to be governed in weighing the presumption of innocence. On the contrary, it was calculated to, and doubtless did, mislead the jury as to the quantity and quality of evidence which the law required of plaintiff to support his claim that the stock in controversy was stolen. It was an unauthorized enlargement of plaintiff's burden of proof, and to that extent gave to defendant an advantage greater than that granted by the mere presumption of innocence.

Counsel for respondent cites the case of *Hunter* v. *Hunter,* 111 Cal. 267, [52 Am. St. Rep. 180, 43 Pac. 756, 31 L. R. A. 411], in support of his assertion that the presumption of innocence, in a civil case, can be overcome only by *"conclusive"* proof. He relies largely upon an excerpt from the opinion of the cited case, which in turn was quoted from *Sharp* v. *Johnson,* 22 Ark. 79, and is as follows: "A charge of an act of immorality or of disobedience of a positive law, will not be received unless supported by direct evidence. Circumstances showing probability merely are not enough; the fact averred must be conclusively proved."

One phase of *Hunter* v. *Hunter* involved the question of
the supremacy of conflicting presumptions, and it is apparent
that the language quoted in the opinion, and now relied upon
by respondent, was employed by the author of the opinion in
passing and merely to point the discussion of the case. We
do not understand the ultimate decision in that case to declare,
as a rule of law, that the measure of proof required to over-
come the presumption of innocence is the same in civil and
criminal cases.

The general instructions given in obedience to subdivision 5
of section 2061 of the Code of Civil Procedure, declaring that
the preponderance of evidence should control the result, made
no reference to the plaintiff's claim of theft, while that issue
was specifically committed to the jury's consideration by the
instruction complained of. It requires no argument to show
that the charge of the court given upon the general issue is
in irreconcilable conflict with the instructions upon the special
incidental issue of the alleged theft of the stock. "In such
a case it is impossible to determine which of the conflicting
rules presented to them was followed by the jury and the
error . . . of the instructions must be deemed to be prejudi-
cial." (*Rathbun* v. *White*, 157 Cal. 253, [107 Pac. 309].)

Respondent's contention that the jury arrived at the only
verdict possible under the evidence challenges the sufficiency
of the evidence to support a verdict in favor of appellant had
one been rendered in his favor. Therefore, as suggested by
counsel, "the evidence must be tested by the rule applicable
to a motion for a nonsuit or to a directed verdict at the close
of the evidence."

Tested by this rule, the truth of plaintiff's evidence, for the
purpose of this discussion, is admitted, and every inference
of fact which can be legitimately drawn therefrom should be
interpreted most strongly against the defendant. (*Wright* v.
*Roseberry*, 81 Cal. 87, [22 Pac. 336]; *Warner* v. *Darrow*, 91
Cal. 312, [27 Pac. 737]; *Goldstone* v. *Merchants'* etc. *Co.*, 123
Cal. 632, [56 Pac. 776]; *Hanley* v. *California etc. Co.*, 127
Cal. 232, [59 Pac. 577, 47 L. R. A. 597].) There was some
conflict in the evidence (*Cooper* v. *Spring Valley Water
Works*, 145 Cal. 207, [78 Pac. 654]), and we are not pre-
pared to say that the evidence on behalf of appellant, if be-

lieved by the jury, was wholly insufficient to support a verdict in his favor. On the other hand, we do not wish to be understood as intimating that the evidence compelled a verdict against respondent. In the face of a conflict of evidence we are not required, nor permitted, to speculate upon the sufficiency of the evidence to support a verdict in favor of either party. The determination of such a question rests exclusively in the discretion of the trial judge.

The subject matter of instruction No. 20 hereinbefore quoted embraced the doctrine of equitable estoppel (generally cited and applied in support of the claims of innocent third party purchasers), the origin of which is to be found in the maxim, "Where one of two equally innocent persons must suffer from the fraud of a third, he who first trusted must first suffer." This instruction is vigorously assailed by counsel for appellant. Inasmuch, however, as counsel for respondent consider that the principle of law enunciated therein was inapplicable to any phase of the case, it will suffice to say that the instruction should not have been requested or given.

"Great caution should be exercised in applying this principle, and the court should be satisfied that the case is one calling for its application before the question is submitted to the jury as to which of the parties is entirely *in delicto.*" (*Davis* v. *Davis*, 26 Cal. 45, [85 Am. Dec. 157].)

"It is good and useful in its place, but will always make trouble if not kept where it belongs." (*Rapps* v. *Gottlieb*, 142 N. Y. 164, [36 N. E. 1052].)

A fact not in evidence (that Dr. Lochhead knew the stock in controversy was stolen) is assumed in instruction No. 22, and to this extent the instruction was erroneous.

In his argument to the jury respondent's attorney contended that "the notice served by Mr. Cooper on the defendant was entirely insufficient because it was not stated in the notice that the stock had been stolen; that if the plaintiff had notified the defendant that the stock had been stolen, of course the defendant would have refused to transfer the stock, but defendant had no right upon the mere claim of plaintiff that the stock belonged to Dr. Lochhead's estate, to refuse to transfer it when the certificate was presented with the genuine in-

dorsement of Dr. Lochhead upon it; that if plaintiff believed that Dr. Lochhead's estate owned the stock, it was his duty to bring suit either against the defendant to enjoin the transfer, or against Dr. Terrill to recover the stock, but it was not the duty of defendant to take any action whatever; . . . that if it had refused to transfer the stock, it would have been subjected to a suit by Dr. Terrill or the First National Bank.''

In view of this argument appellant's counsel requested the court to charge the jury that ''In this case, the evidence is undisputed that before it canceled the certificate in controversy, defendant was notified by plaintiff that the stock belonged to Dr. Lochhead's estate, and was forbidden to permit a transfer of it.   Upon receipt of this notice defendant could lawfully have refused to transfer the stock, and could have commenced an action without expense to itself against the persons claiming to own the stock, to compel them to litigate their claims to it, and when the court had decided who the owner was, defendant could have recognized such person as the owner without incurring any liability to any of the other claimants.   It was not obliged to pursue this course, however, but it had the right to decide without the aid of the court who it would recognize as the owner of the stock, but it took the risk of having to pay the true owner the value of the stock if it turned out that the person it had recognized as the owner was not the true owner.''

· This requested instruction stated a correct legal principle (Code Civ. Proc., sec. 386; *Dows* v. *Kidder*, 84 N. Y. 121; *Wetherly* v. *Straus*, 93 Cal. 283, [28 Pac. 1045]; *Wilson* v. *Nugent*, 125 Cal. 280, [57 Pac. 1008]); and in view of the argument of respondent's counsel, it was pertinent and should have been given.   (*Todd* v. *Todd*, 221 Ill. 410, [77 N. E. 680]; *Yore* v. *Mueller etc. Co.*, 147 Mo. 679, [49 S. W. 855]; *Pryor* v. *Morgan*, 170 Pa. 568, [33 Atl. 98]; *Norton* v. *Galveston etc. Ry. Co.* (Tex. Civ. App.), 108 S. W. 1044.)   It is true that certain instructions dealing with general principles of law applicable to the facts of the case ignored appellant's claim that the stock had been stolen, but this issue was elsewhere in the court's charge sufficiently covered, and we are satisfied that, upon this phase of the case, the charge of the court was not in conflict.

The order appealed from is reversed, and the cause re-manded for a new trial.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 13, 1911.