[Sac. No. 1224. In Bank.—September 19, 1904.]

## CHARLES BICKERDIKE, Appellant, v. STATE OF CALIFORNIA, Respondent.

COYOTE BOUNTY CLAIMS — ASSIGNMENT OF CERTIFICATES — FINDING AGAINST EVIDENCE.—Where the evidence is without conflict that each of the coyote bounty claims involved in certain counts of the complaint, upon which the court found against an assignment of the certificates, was purchased by plaintiff's assignors from an unknown person, claiming to be the person named as owner in the certificate, which he had in his possession, and who, in the name of the person therein named, gave his power of attorney to receive the warrant therefor from the controller and the money from the treasurer, there being no pretense of claim that the person making the assignment was not the identical person named in the certificate, it must be held that the finding is against the evidence.

ID.—PRESUMPTIONS IN FAVOR OF ASSIGNMENT—PRIMA FACIE PROOF.— The original holder of each certificate who made the assignment was presumptively the owner thereof, from the fact of possession and exercising dominion over it; and he must be presumed to have been innocent of crime or wrong, and not to have attempted to personate another, but to be the person named in the certificate whom he represented himself to be, and which certificate he purported to sell. Identity of person is presumed from identity of name; and it must be presumed that the person signing the power of attorney was the person named in the certificate as the original owner of the claim, and, as he is the person who sold the claim, the *prima facie* proof is complete.

ID.—EVIDENCE—EXECUTION OF POWERS OF ATTORNEY.—Where the powers of attorney were received in evidence without any specific objection on the ground that the execution thereof had not been proved, and the execution was proved by the persons who took· the assignment, and the court overruled an objection that their testimony was not the best evidence, any error against the defendant in such ruling cannot be considered upon appeal by the plaintiff,

and the evidence of the execution must be considered, for the purposes of the appeal, as properly before the court.

ID.—IMPROPER CERTIFICATE OF COUNTY CLERK.—A certificate of the county clerk which did not purport to contain a copy of any record in his office, but which merely certified that certain certificates were issued to a list of original claimants on specified dates, pursuant to an order of the board of supervisors, was properly excluded from evidence.

ID.—PRIMA FACIE PROOF OF CLAIM—LOST CERTIFICATES—SECONDARY EVIDENCE.—The certificates issued to claimants of bounty are *prima facie* proof of their claims. While such a certificate is ordinarily the best, and probably the only, evidence of its issuance and contents, yet where it had been lost or destroyed, both its issuance and contents may be shown by other competent evidence; and when that is done the claim would be established to the same extent of *prima facie* proof of the claim as if the certificate itself had been produced in evidence.

APPEAL from an order of the Superior Court of Sacramento County denying a new trial. J. W. Hughes, Judge.

The facts are stated and referred to in the opinion of the court.

George E. Bates, W. C. Van Fleet, and Edward F. Treadwell, for Appellant.

U. S. Webb, Attorney-General, George A. Sturtevant, Deputy Attorney-General, and Devlin & Devlin, for Respondent.

ANGELLOTTI, J.—This action was brought under the provisions of the act of March 23, 1901, authorizing suits against the state on claims arising under the Coyote Bounty Act of 1891 (Stats. 1901, p. 646), and is the same action involved in the appeal in *Bickerdike* v. *State of California*, heretofore decided (*ante,* p. 681), to which reference is made for the general facts of the case. That was an appeal by the state from the judgment in favor of the plaintiff as to most of the eight hundred and ninety-two counts of the complaint, and from an order denying a new trial in regard thereto. As to some of the counts, the findings and judgment were in favor of the defendant, and the plaintiff moved for a new trial as to sixty-six of these counts. His motion having been

denied, he took this appeal from the order denying the motion. The plaintiff sued as the successor in interest of the original owners of the claims, claiming to be the present owner and holder thereof.

1. As to fifty-seven of these counts, the trial court found that all of the allegations of the complaint are true, except the allegation contained in each count to the effect that, before the filing of the complaint, the certificate, claim, and demand were, by the owner, sold, assigned, transferred, and delivered to plaintiff, and that plaintiff ever since has been and now is the owner and holder of the same, which allegation, as to each of said counts, was found to be untrue.

This finding is attacked by plaintiff, his contention being, that the evidence is insufficient to justify the same.

The question is as to the alleged assignment by the original owners of some of these claims to the Kern Valley Bank, and by the original owners of the others thereof to David Hirshfield and C. Cohn, it being admitted that plaintiff was the assignee of all the rights, title, and interest of said bank and said Cohn and Hirshfield.

The evidence is without conflict to the effect that each of the claims involved in these counts was purchased by either the bank or Cohn and Hirshfield from the person claiming to be the person named as owner in the certificate issued by the county clerk, and who then had such certificate in his possession, and thereupon delivered the same to the purchaser. In practically all of the transactions of purchase of the claims here involved the person purporting to sell the claim was not personally known to the purchaser, and the only evidence that he was the owner was the fact that he had the certificate in his possession, claimed to be the person named therein as the owner, as such person purported to sell the claim, and, *in the name of such person,* authorized the purchaser by powers of attorney to receive the warrant therefor from the state controller, and the money from the state treasurer.

There is, however, absolutely nothing in the record to overcome the effect of this evidence, and there is no pretense that it has ever been claimed by any one that the person making the assignment was not the identical person named in the certificate. We are satisfied that under such circumstances

it must be held that the finding assailed is not supported by the evidence.

It may be that the mere possession of the certificate would not afford sufficient proof that the holder was the person named therein and the owner of the claim against the state evidenced thereby. He was, however, presumptively the owner of the certificate (Bounty Act of 1901, sec. 3; Code Civ. Proc., sec. 1963, subd. 11), which constituted the only tangible evidence of the claim, except in so far as the records of the board of supervisors might evidence such claim, and upon which the state officers might act and·pay the claim.

Being so in possession of such certificate, the holder exercised over the claim an act of ownership of the highest character,—viz., the absolute disposition thereof by sale.

The law presumes that a person is the owner of property from exercising acts of ownership over it (Code Civ. Proc., sec. 1963, subd. 12), and we know of no reason why such presumption should not obtain under the circumstances set forth.

Likewise, the law presumes that a person is innocent of crime or wrong (Code Civ. Proc., sec. 1963, subd. 1) in civil as well as in criminal cases (*Hunter* v. *Hunter,* 111 Cal. 261, 267[1]), and it will be presumed that the persons making the transfers and executing the powers of attorney did not attempt to personate others, and by so doing fraudulently procure property to which they were not entitled, but rather that they were the persons whom they represented themselves to be, the persons designated in the certificates of which they had possession, and the owners of the claims which they purported to sell.

In each transaction the person signing the power of attorney signed as his name the name appearing in the certificate as the name of the person to whom the certificate had been issued. There has never been any claim to the effect that the person so signing did not sign his true name. Identity of person is presumed from identity of name (Code Civ. Proc., sec. 1963, subd. 25), and it must therefore be presumed that the person signing the power of attorney was the person named in the certificate as the original owner of the claim. As the person

---

[1] 52 Am. St. Rep. 180.

who signed the power of attorney is the person who sold the claim, the proof is complete.

While presumptions of the character here mentioned may be controverted by other evidence, and the effect thereof easily overcome, the court or jury is bound to find according thereto, unless they are so controverted. (Code Civ. Proc., sec. 1961.)

It is contended that the execution of the powers of attorney was not proven. It appears that the powers of attorney were received in evidence without any specific objection on the ground that the execution thereof had not been proved. The objection of defendant being only "that they simply constituted the person therein named as agent, and did not convey to him any interest in said claim, and that the same was irrelevant, incompetent, and immaterial." Assuming, · however, that the question as to the execution of these powers of attorney is before us, the evidence shows such execution. The uncontradicted evidence of Charles Bickerdike, David Hirshfield, and C. Cohn was to the effect that in every instance the person selling the claim executed and delivered a power of attorney directed to the state controller, asking him to deliver his warrant for the claim to the purchaser, and also a power of attorney directed to the state treasurer, asking him to pay such warrant to the purchaser, and, admittedly, the powers of attorney subsequently introduced were the powers of attorney referred to. It is true that the evidence above set forth was objected to by defendant on the ground that it was not the best evidence, but the court overruled the objection, and we cannot on this appeal by plaintiff consider errors or alleged errors against defendant. The evidence was admitted, and must be considered, for the purposes of this appeal, as properly before the court. It is therefore unnecessary to consider the question as to the competency or effect of the proof of the genuineness of the signature of the subscribing witness, by a person other than the subscribing witness. This question may not arise on another trial.

2. As to the remaining nine counts, the trial court found that all of the allegations of the complaint were untrue. These findings are attacked. Due proof of ownership of these claims in plaintiff was made. The evidence showed in each case a transfer of the claim and the execution and delivery of the certificate and power of attorney to the purchaser, the sending

of the same by the purchaser to the National Bank of D. O. Mills & Co. at Sacramento for collection, and the delivery of the same by said bank to the secretary of the state board of examiners. All of the certificates so sent appeared ''in a record kept by the said secretary'' in his office, and the certificates were on file in said office in the year 1895, but none of them could be found on file in such office or elsewhere at the time of the trial, and there was no record showing the withdrawal thereof by or delivery to any person. There can be no question, under the record before us, that there was a supervisors' certificate for each one of these claims.

The only other evidence offered to sustain the allegations of the complaint as to these claims was the certificate of the county clerk of Kern County of date July 10, 1902, wherein he certified ''that it appears from the records in my said office that, pursuant to an order of the board of supervisors passed on or about the ——— day of ————, 189—, the county clerk of said county, on or about the ——— day of ————, 189—, issued to the following-named persons certificates for coyote scalps bounty, and for the number of scalps set opposite their respective names, to wit:'' The list of original claimants, the number of scalps credited to each, and the dates of issuance of the certificates, ranging from January 6, 1892, to July 18, 1894, follow.

To the introduction of this certificate in evidence, the defendant objected, on the ground that the same was not a certificate of any record of the office of said county clerk, was but the conclusion of the witness and hearsay, that the certificate was not required or authorized by any law, and was immaterial, incompetent, and irrelevant. The objection was sustained, and plaintiff excepted.

The ruling of the court excluding this certificate was undoubtedly correct. The certificate did not purport to contain a *copy* of any record of the office of the county clerk, but showed upon its face that it was nothing more than a written statement of that officer as to his conclusions as to the effect of certain records that he found therein. The officer did not certify that the document contained a copy of any record or entry, and, clearly, it did not contain such a copy. A certified copy of the records of the office, so far as they related to these claims, might have been admissible, but we know of

no statutory provision or rule of law that would have warranted the admission of the certificate in question for any purpose.

It, however, sufficiently appears from the evidence that was introduced that the certificates were in fact issued, and finally deposited with the secretary of the board of examiners, and the question remains as to whether this proof was sufficient to require findings for plaintiff, it appearing that the certificates had been lost or destroyed.

We have discussed the effect of these certificates, as evidence, in the opinion in the case of *Bickerdike* v. *State of California, ante,* p. 681. The certificate was, under the provisions of the Bounty Act, in effect, the expression of the determination of the board as to the validity of the claim, a document expressly authorized and required by the law to be issued for the purpose of establishing, *prima facie* at least, the validity of such claim against the state. Its issuance was a prerequisite to the collection of any money from the state. The fact of its issuance and delivery to a person *prima facie* established his claim, and dispensed with the production of further evidence in support thereof. While such a certificate would ordinarily be the best, and probably the only, evidence of its issuance and its contents, we have no doubt that where it had been lost or destroyed both its issuance and contents might be shown by other competent evidence, and that when this was done the claim would be established to the same extent as if the certificate itself had been produced in evidence.

We are of the opinion that the motion for a new trial should have been granted as to all the counts involved therein.

The order denying plaintiff's motion for a new trial is reversed.

Van Dyke, J., Shaw, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.

·Beatty, C. J., deeming himself disqualified, did not participate.