[S. F. No. 6185.   Department One.—September 13, 1913.]

## HUMBOLDT MILLING COMPANY (a Corporation), Respondent, v. NORTHWESTERN PACIFIC RAILWAY COMPANY (a Corporation), Appellant.

CONTRACT FOR SHIPMENT OF LUMBER AT SPECIFIED RATE—DURATION OF AGREEMENT—CONSTRUCTION.—An agreement between the owners of a timber claim and a railroad company provided that if the company would construct a spur track into the claim, and extend it as might be required, the owners of the claim would deliver to the company for transportation to their mill, "not less than two thousand cords per year of shingle and shake bolts combined, for a period of five years from the date hereof, making ten thousand cords in all," and would pay freight thereon at the rate of fifty cents a cord. This was the only provision of the contract purporting to bind the owners to ship any materials or to pay any specific rate of freight. By a further provision, the owners agreed that if they delivered "in any one year during the life of this agreement" less than two thousand cords, they would pay, as liquidated damages, fifty cents per cord for the deficiency, "provided, that if in any subsequent year *within ten years* we deliver more than 2000 cords, the excess shall be applied to the year wherein the full amount was not delivered, and the money paid as liquidated damages shall be applied at the rate of fifty cents per cord upon such excess so delivered." In the final clause, the railroad company agreed to build and extend the spur track, to furnish a certain number of cars, and to make delivery of the bolts at the shippers' mill with reasonable dispatch. *Held*, that the agreement did not obligate the railroad to transport the bolts at the rate of fifty cents per cord for a period in excess of five years.

ID.—RIGHT OF SHIPPERS TO RECOUP AFTER EXPIRATION OF CONTRACT.— The proviso giving the shippers the right, for a period of ten years, of recouping the amounts paid as liquidated damages during the five years, on account of deficits in shipments, did not have the effect of extending the life of the agreement beyond the five years previously fixed therein for its duration.

ID.—REASONABLE INTERPRETATION OF CONTRACT.—A contract should receive such an interpretation as will make it reasonable. Under the circumstances of this case, an interpretation of the contract would be unreasonable which would impose upon the railroad company the burden of carrying freight, if any were offered, for more than five years, while it had no right to require that any should be offered after that period.

ID.—ACTION FOR BREACH OF CONTRACT—JUDGMENT—FINDING NOT IN-
VOLVED IN ISSUES.—In an action against the railroad company to
recover damages for the alleged breach of such contract, due to
the refusal of the railroad, after the expiration of the five years,
to transport the plaintiffs bolts at the agreed rate of fifty cents
per cord, a judgment in favor of the plaintiff cannot be sustained
because of a finding that such rate during all of the times involved
was a fair and reasonable price for the transportation, where such
issue was neither raised by the pleadings nor tried in the lower
court.

ID.—ASSIGNMENT OF CONTRACT—PAROL EVIDENCE TO ESTABLISH.—
Where the original owners of the timber claim, who executed the
contract, were partners, their assignment of the contract to the
plaintiff is shown by parol evidence that prior to the commence-
ment of the action, the firm transferred all of its tangible assets
to the plaintiff, a corporation whose stock was, in the main, held
by them; that the corporation thereupon took possession of the
property, as well as of the written agreement, and assumed control
of the business; that shipments of bolts were thereafter made by
it, and that the defendant railroad company and its predecessors
recognized the plaintiff and dealt with it as the party exercising
rights and owing duties under the agreement.

ID.—ASSIGNMENT MAY BE SHOWN BY PAROL TESTIMONY.—In the absence
of any statute requiring the assignment of such an agreement to
be in writing, its transfer may be shown by parol testimony.

APPEAL from a judgment of the Superior Court of Hum-
boldt County and from an order refusing a new trial. Clifton
H. Connick, Judge.

The facts are stated in the opinion of the court.

F. A. Cutler, and E. W. Wilson, for Appellant.

Coonan & Kehoe, and Clarence Coonan, for Respondent.

SLOSS, J.—The plaintiff brings this action to recover dam-
ages for the alleged breach of a written agreement entered
into between W. J. Swortzel and R. R. Smith, copartners
under the firm name of Swortzel & Smith, of the one part,
and Eel River & Eureka Railroad Company, a corporation,
of the other part. The plaintiff claims as assignee of the
rights of Swortzel & Smith under said agreement, and seeks
to hold the defendant as successor in interest to the said Eel
River & Eureka Railroad Company.

. The agreement in question was executed on March 27, 1901. Prior to that time, as the complaint avers, Swortzel & Smith were the owners of the shingle and shake bolt timber upon a tract of land in Humboldt County known as the Swett claim. They also owned a shingle mill at Fortuna, in said county. The Eel River & Eureka Railroad Company operated a railroad as a common carrier between Eureka and Burnell's station in said Humboldt County. Its railroad line passed near the location of Swortzel & Smith's mill, but did not extend to within a mile or thereabouts from the Swett claim. The agreement here involved was made for the purpose of enabling Swortzel & Smith to move shingle bolts from their said claim to their mill and to give to the Eel River & Eureka Railroad Company the carriage of said bolts.

The agreement, after reciting that Swortzel & Smith were desirous of removing shingle and shake bolts from the Swett claim to their mill at Fortuna, and that in order to remove said bolts it would be necessary to build a railroad up Palmer Creek into said land, provides as follows:

"Therefore, we the said parties of the first part covenant and agree with the said party of the second part, that if it will commence the construction of a switch or spur track from its main line up said Palmer Creek or Gulch as soon as this agreement is executed, and prosecute the building of the same diligently until completed onto said Swett claim, and at a point one hundred (100) yards beyond an old shingle mill, and will extend said track from year to year as it may be necessary so to do along the right of way owned by the said party of the second part in order to conveniently remove said shingle and shake bolts, that the parties of the first part will deliver to the said party of the second part upon cars furnished by the said party of the second part (provided, however, that all cars are to be loaded and unloaded by the parties of the first part at their own expense, and all landings necessary are also to be provided by the said parties of the first part and at their own expense), for transportation to the mill of the said parties of the first part at Fortuna, not less than two thousand (2,000) cords per year of shingle and shake bolts combined, for a period of five (5) years from the date hereof, making ten thousand (10,000) cords in all; and we the parties of the first part further agree to pay therefor to

the party of the second part, freight at the rate of fifty (50) cents per cord of 128 cubic feet.

"And we, the parties of the first part, further agree that if we deliver in any one year during the life of this agreement, a less amount than the said two thousand (2,000) cords per year, that we the parties of the first part will pay to the party of the second part, as and for liquidated damages, fifty (50) cents per cord for bolts not delivered up to two thousand (2,000) cords; provided, however, that if in any subsequent year within ten years, we, the parties of the first part, deliver more than two thousand (2,000) cords, the excess shall be applied to the year wherein the full amount was not delivered, and the money paid as liquidated damages shall be applied at the rate of fifty (50) cents per cord upon such excess so delivered."

The agreement provides, further, for the time of payment of monthly installments, for freight earned, and for the giving by Swortzel & Smith to the railroad company of a bond for the faithful performance of their covenants. It closes with a promise on the part of the Eel River & Eureka Railroad Company that it will at once commence the construction of a switch or spur track from its main line up Palmer Creek to a given point in the Swett claim, and will extend said track on said land from year to year as necessary; and "that it will furnish fifteen cars and make delivery of said bolts from said land to said mill at Fortuna with reasonable dispatch, giving to the said parties of the first part equally as good service as any other patrons of the road."

The complaint, after incorporating this agreement, alleges the transfer of the timber on the Swett claim and of the mill at Fortuna by Swortzel & Smith to plaintiff, and the assignment and transfer to plaintiff of all their right, title, interest, and obligations under the aforesaid agreement. It further alleges the construction of a switch by the defendant as agreed, and avers that plaintiff thereupon began to deliver to said Eel River & Eureka Railroad Company on said Swett claim, and said railroad company accepted and hauled, shingle bolts for transportation to the said mill at Fortuna. During the year beginning March 27, 1901, and ending March 27, 1902, the plaintiff failed to deliver two thousand cords, as required by the agreement, but delivered only one thousand four hun-

dred cords, and under said agreement it paid the Eel River & Eureka Railroad Company for hauling six hundred cords of bolts in addition to those actually hauled. The purchase of the property of the Eel River & Eureka Railroad Company and the assumption of its obligations under the contract by the San Francisco & Northwestern Railway Company, and a subsequent like transfer to and assumption by the defendant Northwestern Pacific Railway Company, are then alleged. In each year down to 1907, the plaintiff delivered shingle bolts to the Eel River & Eureka Railroad Company or its successors for transportation to its mill and the various railroad companies accepted said deliveries and transported the bolts.

The items of damage claimed all arise from transactions occurring after the twenty-seventh day of March, 1907. It is alleged that during the year beginning on the last named date the plaintiff delivered to the defendant on said Swett claim for transportation to its mill two thousand five hundred and one-half cords of shingle bolts which were transported by the defendant and delivered at Fortuna. The defendant, however, refused to accept and transport the same for fifty cents per cord, but demanded and required plaintiff to pay seventy-five cents per cord, which sum was paid by plaintiff under protest. The plaintiff claimed that this constituted an over-charge of twenty-five cents per cord, amounting to $625.12½ for the two thousand five hundred and one-half cords. It was further alleged that since 1907 the defendant has not hauled any bolts for plaintiff. That during the winter of 1907 portions of the spur track extending to the Swett claim were washed out and destroyed and defendant refused to repair the same, and further, refused to haul any bolts for plaintiff from said Swett claim to the mill at Fortuna unless plaintiff would repair said spur track at its own cost and pay defendant seventy-five cents per cord for transporting said bolts. Plaintiff was thereupon compelled to transport its bolts from the Swett claim to its mill by other means, and during the year 1908 transported two thousand two hundred ninety-three and eight-tenths cords at a cost to it of $2,628.81, which plaintiff alleges was the least sum for which it was able to get said bolts transported. The amount of damage claimed under this head is $1,481.91, being the difference between the actual cost of transporting the two thousand two hundred

ninety-three and eight-tenths cords and the contract price of fifty cents per cord. The third element of damage is the failure to refund to plaintiff the sum of $250.12½, being at the rate of fifty cents per cord for the five hundred and one-half cords shipped in 1907 in excess of two thousand, such sum being applicable, as was claimed, on account of the amount paid by plaintiff to the defendant's predecessor in 1902 for the six hundred cords which it did not ship. .

The answer, while admitting the execution of the agreement and bond, denied most of the allegations of the complaint, with some exceptions which will be mentioned hereafter. It set up a counterclaim for $457.50 by reason of the failure of the plaintiff to deliver for shipment the ten thousand cords of bolts as required by said agreement.

The cause was tried before the court sitting without a jury. The findings were in the main in favor of the plaintiff. On the counterclaim the court found that in the deliveries of bolts for 1905 there was a shortage of one hundred sixty-nine and one-half cords below the minimum of two thousand; that said shortage had not been paid for; that all of defendant's other claims for shortage were barred by the statute of limitations, but that it was entitled on its counterclaim to $84.75 for said shortage of one hundred sixty-nine and one-half cords. The conclusions of law declare that plaintiff was entitled to judgment for defendant's breach of the contract in the sum of $2,357.29 (the amount claimed in the complaint) less the $84.75 due defendant on its counterclaim, and for the balance, $2,272.54, the plaintiff had judgment. The defendant appeals from the judgment and from an order denying its motion for a new trial.

The first contention of the appellant is that the evidence does not support the finding that Swortzel & Smith assigned and transferred all their rights in the agreement to the plaintiff. We shall treat this point briefly, since we have reached the conclusion that the judgment and order appealed from must be reversed upon grounds touching more directly the substantial merits of the controversy. It is true that the evidence shows no formal transfer by Swortzel & Smith to the plaintiff corporation. But it appears that the firm of Swortzel & Smith transferred all of its tangible assets to the plaintiff, a corporation whose stock was, in the main, held by the mem-

bers of the partnership; that the corporation thereupon took possession of said property, as well as of the written agreement, and assumed control of the business; that shipments of bolts were thereafter made by it, and that the defendant and its predecessors recognized the plaintiff and dealt with it as the party exercising rights and owing duties under the agreement. In the absence of any statute requiring the assignment of an agreement such as the one here involved to be in writing, a transfer to plaintiff could be shown by parol testimony (Civ. Code, sec. 1052), and we are satisfied that the facts above outlined were sufficient to authorize a conclusion that the agreement itself had, with the consent of the Eel River & Eureka Railroad Company and its successors, both assigned and transferred by Swortzel & Smith to the plaintiff.

More serious questions arise with respect to the interpretation of the agreement itself, and plaintiff's right to recover upon the claims of damage asserted by it.

The allowance of the item of $1,481.91, the excess of the actual cost of transporting bolts in 1908 over a rate of fifty cents per cord, and of that of $625.12½, the difference between the charge of seventy-five cents and fifty cents per cord on bolts shipped in 1907, must rest on the premise that the agreement bound the defendant to transport bolts in 1907 and 1908 at a rate of fifty cents per cord. This premise has its only foundation in a mistaken interpretation of the terms of the agreement. All of these shipments were made more than five years after the execution of the contract. Upon the expiration of this period the obligations of the parties had ended, except for the limited purpose of giving the plaintiff a qualified right of reimbursement for excess payments theretofore made by it.

The first clause of the agreement provides that, if the railroad company will construct the spur track into the Swett claim, and extend it as may be required, the shippers will deliver for transportation "not less than two thousand (2,000) cords per year of shingle and shake bolts combined, for a period of five (5) years from the date hereof, making ten thousand (10,000) cords in all; and we the parties of the first part further agree to pay therefor to the party of the second part, freight at the rate of fifty (50) cents per cord of 128

cubic feet.'' This is the only provision purporting to bind the parties of the first part to ship any bolts or to pay any specific rate of freight. It clearly limits these obligations to a period of five years. The railroad company agrees, in the final clause, to build and extend the spur track, to furnish fifteen cars, and make delivery of ''said bolts'' to the mill at Fortuna with reasonable dispatch. Though no term of years or price for carriage is here specified, the obligations of the parties are necessarily reciprocal, and the obvious implication from so much of the agreement as we have just mentioned is that the railroad is bound to transport, at fifty cents per cord, the bolts offered for carriage by the shippers during the five years.

The argument that the right to have the bolts carried at the fifty-cent rate continued longer than five years is rested on the clause following that in which the shippers agree to ship a minimum of two thousand cords per year for five years and to pay therefor at the given rate. The clause thus relied upon is the one (above quoted) in which the shippers agree that if they deliver ''in any one year during the life of this agreement'' less than two thousand cords, they will pay, as liquidated damages, fifty cents per cord for the deficiency, ''provided, however, that if in any subsequent year *within ten years* we . . . deliver more than two thousand cords, the excess shall be applied to the year wherein the full amount was not delivered, and the money paid as liquidated damages shall be applied at the rate of fifty cents per cord upon such excess so delivered.'' The respondent contends that the words which we have italicized, read in connection with the remainder of the clause, extends the term of the agreement, so far as concerns the defendant's obligation to carry at fifty cents per cord, to ten years, instead of the five theretofore specified. But this is an entirely inadmissible construction. The clause in question does not purport to limit or extend the obligation already imposed upon the shippers to furnish bolts for carriage, or of the railroad to carry at an agreed rate. Its purpose is to provide for the payment of liquidated damages for failure, on the part of the shippers, to deliver the minimum annual amount of two thousand bolts. It provides for such liquidated damages only in event of such failure ''during the life of this agreement.'' The life of the agreement

had already, by a prior clause, been fixed at five years.    Then follows a proviso, entitling the shippers to recoupment, in certain contingencies, for amounts which they may have thus paid as liquidated damages during the five years.    This right of recoupment is extended over a term of ten years.    We find nothing in the clause, however, indicating an intention to have the ten-year term apply to anything but the one subject in connection with which it is mentioned, i. e., the qualified right to reimbursement or allowance for freight money paid in excess of actual carriage.    The entire paragraph has to do solely with such excess payments, the first part of the clause stating the obligation to pay, the latter declaring a right to reimbursement.    The main provisions of the contract, binding the shippers to furnish freight and the railroad to carry it for five years at fifty cents per cord, are in no way affected by this subordinate clause dealing, as it does, solely with the consequences of a failure on the part of the shippers to provide the agreed quantity of bolts.    The ten-year provision no doubt contemplated that, if the spur were still in existence, and bolts remained to be moved after the expiration of five years, further shipments would be made. In that event it was provided that any amount shipped in excess of two thousand cords per year during a term of ten years should be figured at fifty cents per cord so far as it could be covered by amounts already paid for deficiency in shipments during the five years of the life of the main terms of the agreement.    But the clause did not otherwise extend the life of those terms.    This seems to us to be so clearly the natural and reasonable interpretation of the agreement that it is not necessary to look to the various rules of construction to which resort is properly had where the language used is of doubtful meaning.    (Civ. Code, sec. 1637.)    One such rule may, however, be referred to as strongly supporting the conclusion indicated by what we have said.    A contract must receive such interpretation as will make it, among other things, reasonable.    (Civ. Code, sec. 1643.)    It is not pretended that, under any construction, the shippers were bound, after five years, to furnish bolts for carriage.    The claim of respondent, then amounts to this, that for a period of five (or, perhaps, ten) years after it has ceased to have a right to require the shipment of any bolts, the railroad company was bound to

maintain its road in readiness to carry, at fifty cents per cord, any shipment of bolts, however small in quantity, that might be offered by the plaintiff. The evidence indicates that the road was built for the purpose of moving plaintiffs freight, that it had little, if any, other business, and that a portion of the track was washed out each winter, and had to be repaired in the spring. An interpretation which would impose upon the railroad company the burden of thus carrying freight if any were offered, while it had no right to require that any should be offered, would be anything but reasonable, and should not be adopted unless clearly pointed to by the language used. As we have seen, the language of the writing does not lead to any such interpretation.

Under these views, the judgment, insofar as it awards damages for the failure, during 1907 and 1908, to carry bolts at the contract price, cannot be sustained. The respondent seeks to uphold these items of recovery by pointing to a finding which declares that at all times from the date of the agreement to the commencement of the action the price of fifty cents per cord was a fair and reasonable price for transporting bolts from the Swett claim to the mill at Fortuna. But this finding is entirely outside of the issues. The complaint did not attempt to state a cause of action against a carrier for refusing to accept freight for carriage at a reasonable rate. It presented simply a claim for damages for breach of contract to carry at an agreed rate. Nor was the case tried upon the theory that any question of reasonable rate was involved. The finding, which, it may be said in passing, we think is unsustained by the evidence, must be disregarded. (*Crescent Lumber Co.* v. *Larson, ante,* p. 168 [135 Pac. 502] and cases there cited.)

There remains for consideration the item of $250.25, claimed as a refund against the liquidated damages paid for a shortage in shipment during 1902. The plaintiff shipped five hundred and one-half cords more than two thousand in 1907, and, under the clause relating to repayment of liquidated damages, was entitled to have an allowance of fifty cents for each cord of such excess applied against its prior payment for deficiency of shipments. The only objection made by appellant to this item is that the facts covering it are not found. But the payment of liquidated damages in 1902, the ship-

ment of two thousand five hundred and one-half cords in 1907, and the failure to repay, are all alleged in the complaint, and admitted by failure to deny in the answer. No finding of these facts was, therefore, required. While the judgment and the order denying a new trial will have to be reversed, there need be no new trial of the issue last referred to, or of those raised by the counterclaim. No attack is made on the disposition of the counterclaim.

The judgment is reversed. The order denying a new trial is reversed with respect to all issues except those presented by plaintiff's claim for the recovery of $250.25, and those raised by defendant's counterclaim; with respect to the issues thus excepted, the order denying a new trial is affirmed.

Angellotti, J., and Shaw, J., concurred.