[Civ. No. 5074. Second Appellate District, Division One.—April 11, 1928.]

W. P. HERBERT COMPANY (a Corporation), Appellant, v. JOHN W. POWELL et al., Respondents.

784

Salisbury & McNeil, Verne E. Robinson and Wiley J. Shannon for Appellant.

Carroll Allen for Respondents.

HOUSER, J.—The action upon which this appeal is based was for alleged damages which resulted to plaintiff from an alleged conversion by defendants of an automobile of which plaintiff claimed to be the owner. The facts necessary to a determination of the controversy are as follows: The defendant H. A. Sellers Company was the owner of an automobile which, on a conditional-sale contract, it sold to one N. E. Whittemore. By the terms of the contract between the parties, until the entire purchase price of the automobile should be paid, the legal title to the automobile was to remain in the Sellers Company. However, at the time the automobile was delivered to Whittemore the Sellers Company indorsed and delivered to Whittemore the certificate of registration of the automobile in which no mention was made of any claim on the part of the Sellers Company to the legal title to the automobile. On the same day Whittemore made application to have the automobile re-registered

in his own name as the legal and equitable owner thereof. Instead of the certificate being issued to the applicant *N. E.* Whittemore, through some inadvertence it was issued to *W. E.* Whittemore. Two days later the Sellers Company assigned the conditional sale contract to defendant Anglo-California Trust Company. It further appears that until shortly before the occurrence of the foregoing transaction Whittemore had been in partnership in business with one Stephens, but which partnership at the time when the purchase of the automobile in question was made had been dissolved; ''that after the dissolution of said partnership, said Stephens represented to Whittemore that he was hard up and wanted to get started again and said Whittemore, in order to help said Stephens along, turned said automobile over to him and told said Stephens to take it and when he got on his feet they would arrange for the payment of the same. That at said time said Whittemore also delivered to said Stephens the registration certificate in the car. Stephens left (Fresno) with said automobile for Los Angeles and this was the last time that Whittemore ever saw or heard anything about said automobile until after the commencement of this action.'' On the third day following the purchase of the automobile by Whittemore ''a person representing himself to be N. E. Whittemore sold and delivered said automobile to W. P. Herbert Company, the plaintiff herein, and endorsed the certificate of registration thereon as registered and legal owner and delivered said certificate of registration to said W. P. Herbert Company, . . . ; that said W. P. Herbert Company purchased said automobile upon reliance on the facts set forth in the said certificate of registration, paid a valuable consideration for said automobile and acted in good faith in said transaction and without knowledge of the claim of any other persons.'' Thereafter, on a conditional sale contract, the Herbert Company sold the automobile to one H. D. Coley, and then assigned the conditional-sale contract to California Finance Company. Within a few months following the last-mentioned transaction the Sellers Company and the Anglo-California Trust Company took the automobile from Coley against his will and without his permission and then sold the automobile to other persons. Before the commencement of this action Coley and California Finance Company assigned their and

each of their rights, etc., in the automobile to the Herbert Company. On such facts judgment was ordered in favor of the defendants, and plaintiff has appealed therefrom.

■ In principle, the law appears well settled that for the purpose of passing title to an innocent purchaser for value, Whittemore had the right to indorse the certificate of registration in the manner in which it has been issued to him. (*People* v. *Ryan*, 74 Cal. App. 125, 127 [239 Pac. 419]; *Commonwealth* v. *Costello*, 120 Mass. 358, 371; *Ray* v. *American Photo Player Co.*, 46 Cal. App. 311 [189 Pac. 130]; *Emery* v. *Kipp*, 154 Cal. 83, 86 [129 Am. St. Rep. 141, 16 Ann. Cas. 792, 19 L. R. A. (N. S.) 983, 97 Pac. 17]; *Fallon* v. *Kehoe*, 38 Cal. 44, 49 [99 Am. Dec. 347]; *Wilson* v. *White*, 84 Cal. 239, 242 [24 Pac. 114].) ■ His transaction with Stephens in which "Whittemore, in order to help said Stephens along, turned said automobile over to him and told said Stephens to take it and when he got on his feet they would arrange for the payment of the same"— at the same time delivering to Stephens "the registration certificate of the car"—is some evidence of an authorization by Whittemore to Stephens, in case of a registration of the automobile, to indorse the certificate of registration. By statutory provision, in substance the rule is laid down that a transfer may be made without writing in every case in which a writing is not expressly required by statute. (Sec. 1052, Civ. Code. See, also, *Bedig* v. *Southern Pacific Co.*, 84 Cal. App. 325 [258 Pac. 148]; *Dingley* v. *McDonald*, 124 Cal. 90, 94 [56 Pac. 790]; *Copp* v. *Mulcahy*, 84 Cal. App. 387 [258 Pac. 141]; *Straus* v. *Eaton*, 47 Cal. App. 538 [190 Pac. 1033]; *Union Mutual L. I. Co.* v. *Broderick*, 196 Cal. 497 [238 Pac. 1034]; *McGown* v. *Dalzell*, 72 Cal. App. 197 [236 Pac. 941]; *Ralph* v. *Anderson*, 187 Cal. 45 [200 Pac. 940]; *Humboldt Milling Co.* v. *Northwestern Pac. Ry. Co.*, 166 Cal. 175 [135 Pac. 503]; *Bickerdike* v. *State*, 144 Cal. 681 [78 Pac. 270]; *Smith* v. *Peck*, 128 Cal. 527 [61 Pac. 77]; *Edwards* v. *Wagner*, 121 Cal. 376 [53 Pac. 821]; *Hellman* v. *McWilliams*, 70 Cal. 449 [11 Pac. 959]; *Doran* v. *Doran*, 99 Cal. 311, 315 [33 Pac. 929].)

■ Although it appears that the Herbert Company purchased the automobile from "a person representing himself to be N. E. Whittemore," it may be inferred that the seller was none other than Stephens. The certificate of registra-

tion showed that the owner of the automobile was not *N. E.* Whittemore, but was *W. E.* Whittemore. Up to a time very shortly before the acquisition of the automobile by Whittemore he and Stephens had been in partnership, and Stephens was presumably familiar with Whittemore's correct initials. Three days only had elapsed between the time of Whittemore's purchase of the automobile and its sale to the Herbert Company by someone who represented himself as *N. E.* Whittemore. A stranger to Whittemore probably would not have known Whittemore's correct initials, or noticed that the initials of Whittemore's name as they appeared in the certificate of registration were incorrect. Had the certificate of registration been indorsed by a person not authorized by Whittemore to do so, a criminal offense would have been committed; and the rule of law is well settled that commission of a crime cannot be presumed.

In the case of *Bickerdike* v. *State,* 144 Cal. 698, 701 [78 Pac. 277], it is said:

"The law presumes that a person is innocent of crime or wrong (Code Civ. Proc., sec. 1963, subd. 1) in civil as well as in criminal cases (*Hunter* v. *Hunter,* 111 Cal. 261, 267 [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756]), and it will be presumed that the persons making the transfers and executing the powers of attorney did not attempt to personate others, and by so doing fraudulently procure property to which they were not entitled, but rather that they were the persons whom they represented themselves to be, the persons designated in the certificates of which they had possession, and the owners of the claims which they purported to sell."

See, also, *Guidera* v. *Lapiana,* 52 Cal. App. 460, 467 [199 Pac. 557]; *Cooper* v. *Spring Valley Water Co.,* 16 Cal. App. 17, 23 [116 Pac. 298].

Section 19 of the Civil Code provides that "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."

Applying such statement of the law, it would seem that when the person from whom the plaintiff purchased the automobile represented himself as *N. E.* Whittemore and produced a certificate of registration showing that *W. E.*

Whittemore was the registered ·owner, the plaintiff had "actual notice of circumstances sufficient to put a prudent man upon inquiry" regarding the fact whether *N. E.* Whittemore or *W. E.* Whittemore was the owner of the automobile. But had the plaintiff made diligent inquiry concerning such matter, all it could reasonably have discovered would have been the fact that while *N. E.* Whittemore was the correct name of the owner of the automobile, the certificate of registration had been incorrectly issued to him in the name of *W. E.* Whittemore. So far as any claim to or equity in the automobile by other persons was concerned, no reasonable inquiry on the part of the plaintiff would have disclosed the fact that either the H. A. Sellers Co. or the Anglo-California Company had or claimed to have any legal or beneficial interest in the automobile.

In the case of *Hammond* v. *Hazard,* 40 Cal. App. 45, 49 [180 Pac. 46], where the authorities are cited, it is held that by the provisions of the Motor Vehicle Act (Stats. 1913, p. 641), the owner of an automobile is required to have it registered in his name; and that such requirement warrants a finding by the trial court that the person in whose name an automobile is registered is in fact the rightful owner thereof. (See, also, 22 Cal. Jur. 667.) It is clear that by indorsing the certificate of registration of the automobile and delivering it to Whittemore and permitting him to have a new certificate of registration issued to him in which he appeared to be the legal and equitable owner of the automobile, the Sellers Company and its assignee were estopped to claim title to the automobile, so far as any *bona fide* purchaser from Whittemore was concerned. (*Parke* v. *Franciscus,* 194 Cal. 284 [228 Pac. 435].)

The fact that in issuing the certificate of registration a mistake was made in one of the initials of Whittemore's name would not have the effect of relieving the Sellers Company from the result of its negligence. It is apparent that because of such negligence on the part of the Sellers Company in permitting Whittemore to procure the issuance of the certificate of registration in his name, it thereafter became possible for him to convey a good title to the automobile to an innocent purchaser thereof for value. As is hereinbefore stated, no question is raised as to either the "innocence" or the "value" features of the transaction

between the parties. But while Whittemore personally might have given a good title to the Herbert Company, the questions first, as to whether orally, or by implication, Stephens was authorized to perform that act for Whittemore; and, secondly, as to whether in the absence of written authority so to do Stephens could be orally authorized to legally effect a re-registration of the automobile from Whittemore to the Herbert Company, require consideration. From the conduct of Whittemore and Stephens it may not be doubted that at least impliedly Stephens was authorized to cause the re-registration of the automobile in his own name. Had he done that and thereafter sold the automobile to the Herbert Company, in the absence of question of legality of such oral or implied authorization, it would seem incontrovertible that the Herbert Company would have received a valid title to the automobile. It may be argued that, while it may not be said that Stephens was expressly authorized to sell the automobile, nevertheless its transfer to him carried with it such a right, and that if he chose to exercise that right, the means necessary to its accomplishment were also carried with it. Manifestly it would be a useless if not an idle act for Stephens perfunctorily to go through the form of causing a registration of the automobile to himself, to be contemporaneously or immediately thereafter followed by a registration thereof to the Herbert Company, when, so far as the transaction among the interested parties was concerned, it might be consummated by the single act of re-registration as between Whittemore and the Herbert Company. But if, without deciding that point, it be assumed that equitably, so far as the immediate parties to the transaction were concerned, the sale was complete and had the effect of investing the Herbert Company with the ownership of the automobile, the question of its legality, so far as the Sellers Company and its assignee are interested, remains for consideration.

At the time when the transaction herein involved occurred, on the transfer of ownership of an automobile operated or driven on the public highways of this state, the Motor Vehicle Law (Stats. 1919, p. 191), among other things, in effect contained the provisions that for the purpose of re-registering the automobile a "statement of the transfer" should be signed by each of the parties to the

transaction and the transferee make application for registration of the automobile in his name. Thereupon, "if satisfied of the genuineness and legality of such transfer," the "department" . . . "shall register said motor vehicle in the name of said transferee" and issue a new registration certificate. The act then provides that "until said transferee has received said certificate of registration and has written his name upon the face thereof in the blank space provided for said purpose by the department, delivery of said motor vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose; . . . "

The case of *Parke* v. *Franciscus, supra,* is authority for the rule "that the certificate of registration, which serves the purpose of the certificate of ownership and the certificate of registration provided for in the act of 1923, must have been properly indorsed upon the reverse side thereof by the transferees of the 'ownership' or title or interest in the car, filed with the motor vehicle department and a new certificate of registration issued in the name of the appellants before title was completely vested in them and before the transfer could be effective or valid for any purpose. It therefore appears that the transfer of an automobile involves "a writing" and that it may not be legally made otherwise. (Sec. 1052, Civ. Code.) As between Whittemore and Stephens, no attempt at compliance with the provisions of the statute having been made by them, it follows that no legal transfer of the ownership of the automobile to Stephens ever took place.

If, for the purpose of the argument, on the sale to the Herbert Company it be assumed that the conduct of Whittemore and Stephens amounted to an oral or an implied authorization for Stephens to make and sign the "statement of the transfer" in behalf of Whittemore, the question of the validity of such an authorization becomes of importance. Section 2309 of the Civil Code provides: "An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing."

From a consideration of the language of the statute it is apparent that, unless the various steps connected with the

transfer of ownership of the automobile from Whittemore to the Herbert Company amounted to "a contract required by law to be in writing," the oral authorization by Whittemore to Stephens was sufficient. So far as the present inquiry is concerned, the statutory requirement contains two principal elements: First, the aggregate of the things necessary to be done leading to the issuance of a new certificate of registration must amount to a "contract"; and, secondly, it must be such a contract as is "required by law to be in writing"—which latter element has already received consideration. ▪ It is clear that the provisions of the Motor Vehicle Act (which, as hereinbefore set forth, in order that a new certificate of registration be issued to the purchaser of the automobile, required that a "statement of the transfer" should be signed by each of the parties to the transaction, and that not until after the new certificate of registration had been received by the purchaser and he had written his name upon the face thereof would the intended transfer of the automobile be deemed complete or valid or effective for any purpose—) by operation of law, or impliedly, become a part and parcel of the agreement of sale of the automobile;—for without full compliance with the statutory requirements no "delivery" of the automobile could be legally made, nor would the intended transfer "be valid or effective for any purpose." In other words, whatever arrangement as to price, terms of sale, or otherwise, might be agreed upon by the seller and the buyer, the indispensable statutory prerequisite to a complete transfer of the ownership of the automobile presumably was as thoroughly understood and agreed to by each of the parties thereto as was any other covenant or condition therein; and while it was perhaps unnecessary that all the terms of the contract be written, the language of the statute directs and compels a designated portion thereof to be reduced to writing. ▪ So construed, it becomes manifest that within the meaning and intent of the provisions of section 2309 of the Civil Code—the contract being one "required by law to be in writing"—assuming the existence of an oral or an implied authorization to Stephens by Whittemore to enter into the contract in his behalf—such authorization was insufficient and could not be used as a basis for making the

transfer of ownership of the automobile from Whittemore to the Herbert Company—notwithstanding the good faith of the latter throughout the transaction. It follows that the judgment should be affirmed. So ordered.

Conrey, P. J., and York, J., concurred.